# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BD PIPE & RAIL, L.L.C., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 14-6623 |
| v. | : | |
| GROWMARK, INC., | : | |
| Defendant. | : | |

**June _29__, 2015**  **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff BD Pipe & Rail, L.L.C. ("BD") brings this action against Defendant Growmark, Inc. ("Growmark"). BD's claims arise out of a series of licensing agreements in which Growmark granted BD the right to enter certain property to remove iron ore and iron pellets. BD claims that Growmark fraudulently induced it into entering the licensing agreements, and breached those same agreements. Growmark moves to dismiss all of BD's claims. For the reasons discussed below, I will grant the motion and dismiss the case.[1]

---

[1] Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

1

I.  BACKGROUND[2]

Growmark is the lessee of property located just south of the Walt Whitman Bridge at 4101 S. Columbus Boulevard, Philadelphia, PA 19123 (the "Growmark Premises"). Compl. ¶ 5, ECF No. 1-4. The Growmark Premises border both the Delaware River and Port of Philadelphia Piers 122 and 124. *Id.* ¶ 10. Growmark leased this plot from two lessors: approximately 12 acres from the Philadelphia Regional Port Authority ("PRPA"), and approximately 30 acres from Consolidated Rail Corporation ("Conrail"). *See id.* ¶¶ 13, 53-54. These two parcels (the "PRPA Parcel" and the "Conrail Parcel," respectively) collectively make up the Growmark Premises. Growmark sought to redevelop the Growmark Premises to use it as an industrial site. *Id.* ¶ 11.

In March 2012, BD and Growmark began negotiations related to the Growmark Premises. BD and Growmark's initial investigations revealed substantial iron ore deposits[3] on the Growmark Premises. *Id.* ¶¶ 16-17. BD agreed to enter Growmark's property and remove the ore, eventually hoping to sell the ore at a profit. *See id.* ¶¶ 95-100, 104-05, 109-10 (seeking damages based off of market value iron ore). During these negotiations and the initial investigations, Growmark represented that it had rights to the iron ore contained on the entirety of the Growmark Premises. *Id.* ¶¶ 13, 17.

---

[2] In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). This "assumption of truth" is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).
[3] The filings sometimes refer to the iron ore at issue is also sometimes referred to as "overburden." *See* Compl. ¶ 12, ECF No. 1-4; Second License Agreement ¶ B, Compl. Ex. I, ECF No. 1-8; Third License Agreement ¶ C, Compl. Ex. L, ECF No. 1-8.

BD and Growmark formalized their relationship in a series of three License Agreements.[4] The First License Agreement, executed August 9, 2012, expired by its terms on May 9, 2013. *See id.* ¶ 21; Third License Agreement ¶ D, Compl. Ex. L, ECF No. 1-8. The parties executed the Second License Agreement September 23, 2013. Compl. ¶ 59. The Third License Agreement, executed January 15, 2014, terminated the Second License Agreement.[5] Third License Agreement ¶ D. Each License Agreement permitted BD to enter the Growmark Premises and remove iron ore. *See* First License Agreement ¶¶ B, 3(b), Compl. Ex. B, ECF No. 1-4; Second License Agreement ¶¶ B, 3(b), Compl. Ex. I, ECF No. 1-8; Third License Agreement ¶ D. In exchange, BD agreed to pay Growmark a fee for every ton of ore removed. *See* First License Agreement ¶ 2(b); Second License Agreement ¶ 2(b); Third License Agreement ¶ D(3)(b). BD also assumed other obligations regarding the Growmark Premises. *See, e.g.*, Compl. ¶ 21(B) (noting that Growmark also agreed to demolish two buildings located on the Growmark Premises).

After executing the First License Agreement, the parties began the process of securing the necessary permits to actually undertake the iron ore excavation. *See id*. ¶¶ 24-29, 35-47, 53-56, 79-80. BD claims that Growmark continued to assert that it possessed rights to the iron ore on the entirety of the Growmark Premises. *See id.* ¶¶ 23, 41, 48-51.

BD claims that, in December 2013, 16 months into the permit application process, Growmark was forced to disclose on a permit form that it does not, in fact, possess a lease with Conrail for the Conrail Parcel. *See id.* ¶¶ 35, 79-80, 93. Confirming this, on January 27, 2014, Growmark sent BD a proposed lease between Conrail and Growmark. *Id.* ¶ 81, 85. BD claims that, without

---

[4] The License Agreements are attached to, and explicitly relied on by, the complaint. Therefore, they may be considered in deciding this motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).
[5] The First and Second License Agreements were only between BD and Growmark. The Third License Agreement was between BD, Growmark, and PRPA.

a lease on the Conrail Parcel, Growmark did not possess and therefore could not have transferred the iron ore rights in the Conrail Parcel to Growmark.

BD brought suit alleging breach of contract, fraudulent inducement, and negligent misrepresentation. At oral argument, BD indicated that all claims stem from the allegation that Growmark claimed to have a valid lease on the Conrail Parcel, and by extension rights to the iron ore in Conrail Parcel, when in fact they did not. *See* Tr. of Oral Arg. at 5:20-24, ECF No. 24 (agreeing that "the whole [transaction with Growmark] . . . didn't come together because of the failure of [Growmark's] delivery on the Conrail [Parcel]").

## II. LEGAL STANDARD

A motion to dismiss should be granted under Rule 12(b)(6) if the plaintiff "under any reasonable reading of the complaint . . . may be entitled to relief." *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010) (internal quotation marks omitted). The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A federal court sitting in diversity is required to apply the substantive law of the state whose law governs the action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties agree that Pennsylvania law governs this action. "When [a federal court] ascertain[s] Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source."

4

*Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010). In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court "must predict how it would rule if faced with the issue." *Id.*

### III. DISCUSSION

Growmark moves to dismiss the entirety of the complaint. Growmark moves to dismiss the breach of contract claims on the grounds that there was no breach of contract. It also claims that integration clauses in the License Agreements foreclose BD's fraudulent inducement and negligent misrepresentation claims. I will dismiss the entire complaint.

#### a. Breach of Contract

BD alleges that Growmark's "failure to provide rights, license and possession of the iron ore is a material breach of the License Agreement."[6] Compl. ¶ 108. Growmark claims that there is no breach of contract because the License Agreements disclaim Growmark's ownership of the iron ore rights, or, at the very least, warn BD that any excavation of iron ore on the Conrail Parcel is conditioned on Conrail's approval.

The First License Agreement states plainly: "Excavation and removal from the area owned by and leased from Conrail is subject to Conrail approval." First License Agreement ¶ 12. Even assuming BD is correct that Growmark represented in contract negotiations that it had the right to all of the ore on the Growmark Premises, including the Conrail Parcel, the First License Agreement contains no promise guaranteeing BD's access to iron ore from the Conrail Parcel. Moreover, the First License Agreement contains an integration clause foreclosing the existence of additional or collateral agreements. *See id.* ¶ 10.

---

[6] BD does not specify which License Agreement is the contract that forms the basis of its breach of contract claim. However, which License Agreement forms the basis of the claim need not be resolved because BD has not demonstrated a breach of any of the three License Agreements.

5

The Second License Agreement is even more explicit. It states that "GROWMARK makes no warranty or representation, express or implied, or assumes any legal liability or responsibility for the ownership, right to remove, quality or content of the Ore Material or the Overburden." Second License Agreement ¶ 1(b)(xiii); *see also id.* ¶ 3(a) ("GROWMARK makes no representation as to the condition of the [Growmark] Premises or ownership of the Ore Material or the Overburden." It also contains the identical language from the First License Agreement that "[e]xcavation and removal from the area owned by and leased from Conrail is subject to Conrail approval." *Id.* ¶ 13. The Second License Agreement also contains an integration clause. *Id.* ¶ 11.

BD cannot assert a breach of contract claim based off of iron ore rights in the Conrail Parcel based off of the Third License Agreement because the Third License Agreement does not cover the Conrail Parcel. The Third License Agreement states that "[e]xcavation and removal of any iron ore containing overburden from the area owned by and leased from Conrail is subject to Conrail approval and is not covered by this Agreement." Third License Agreement ¶ D(17). The Third License Agreement only covers the PRPA Parcel, and specifies that "neither of GROWMARK or PRPA make any representation as to the condition of the PRPA Premises or ownership of the Ore Material or the Overburden." *Id.* ¶ D(8). The Third License Agreement also includes an integration clause. *Id.* ¶ D(14).

In conclusion, none of the three License Agreements BD identifies guarantees unfettered access to the iron ore rights on the Conrail Parcel. Each License Agreement plainly warns that excavation of the Conrail Parcel is subject to Conrail's approval. The Second License Agreement goes even further, disclaiming any representation, warranty, or legal liability for the right to remove iron ore from the Conrail Parcel. BD cannot rely on the Third License

6

Agreement because it does not concern the Conrail Parcel, only the PRPA Parcel. Because all three License Agreements contain an integration clause, none of Growmark's alleged representations regarding its ownership of iron ore in the Conrail Parcel are relevant.

### b. Fraudulent Inducement and Negligent Misrepresentation

In its fraudulent inducement claim, BD alleges that "Growmark . . . knowingly misrepresented [its] property interest rights" in the Conrail Parcel and the iron ore contained within. Compl. ¶ 91. As a result, "BD was induced into the contract based on [Growmark's] misrepresentations and incurred a multitude of obligations and debts." *Id.* ¶ 94. These allegations also form the basis of BD's negligent misrepresentation claim. *See id.* ¶ 102 ("Growmark misrepresented [its] ownership rights to the Growmark Premises intending for BD to rely on it in entering the Licensing Agreement.").

Growmark responds that the fraudulent inducement and negligent misrepresentation claims are barred by integration clauses present in each License Agreement. Mem. in Supp. of Mot. to Dismiss at 10-11, ECF No. 7. Each License Agreement states that "there are no agreements or understandings, either oral or written, between [the parties, and in the Third License Agreement, the parties and PRPA] other than as are set forth in this License." First License Agreement ¶ 10; Second License Agreement ¶ 11; Third License Agreement ¶ D(14). Growmark contends that where a contract contains an integration clause, a party cannot rely on alleged prior or contemporaneous misrepresentations that the contract itself addresses.

The Pennsylvania Superior Court notes that "fraud-in-the-inducement claims are commonly barred if the contract at issue is fully integrated." *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005). "[I]n a case of fraud in the inducement, parol evidence is inadmissible where the contract contains terms that deny the existence of representations regarding the subject

matter of the alleged fraud." *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 546 (Pa. Super. Ct. 2005). Pennsylvania "case law clearly holds that a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations."[7] *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002).

The integration clauses in the three License Agreements bar BD's remaining claims. BD claims that Growmark induced it to enter into the License Agreements through fraudulent or negligent misrepresentations. *See* Compl. ¶¶ 91, 102; Resp. to Mot. to Dismiss at 10-11, ECF No. 14-1 (characterizing these counts as alleging fraud in the inducement). BD alleges that Growmark misrepresented its possession of the iron ore rights in the Conrail Parcel. As discussed above in the analysis of the breach of contract claim, however, each of the three License Agreements directly addresses and contradicts these allegations. In each License Agreement, BD agreed that excavation of iron ore from the Conrail parcel "is subject to Conrail approval." First License Agreement ¶ 12; Second License Agreement 13; Third License Agreement ¶ D(17). BD cannot sustain a fraud in the inducement or negligent misrepresentation claim on the basis of representations that occurred outside the four corners of the License Agreements because it agreed by signing the License Agreements that those representations would not carry legal weight. To hold otherwise would provide BD an end-around the integration clauses it agreed to in the License Agreements.

### IV. CONCLUSION

For the reasons above, I will grant Growmark's motion to dismiss and dismiss the action.

---

[7] Because the Superior Court states that Pennsylvania law is clear that a party cannot justifiably rely on prior oral representations in the face of an integration clause, I predict the Pennsylvania Supreme Court would follow the Superior Court on this issue.

s/Anita B. Brody
_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:	Copies **MAILED** on _____ to: